1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7

8

| | |
|---|---|
| NANCY J. PEARL,            ) | 3:05-CV-00682-RAM |
|                            ) | |
| Plaintiff,        ) | **MEMORANDUM  DECISION** |
|                            ) | **AND ORDER** |
| vs.               ) | |
|                            ) | |
| REGIONAL TRANSPORTATION    ) | |
| COMMISSION OF WASHOE COUNTY,) | |
| NEVADA, et al.,            ) | |
|                            ) | |
| Defendants.       ) | |

9
10
11
12
13
14

15    Before the court is Defendant Regional Transportation Commission of WASHOE

16 COUNTY, NEVADA's Motion for Summary Judgment (Doc. #27).  Plaintiff opposed the

17 motion (Doc. #33) and Defendant replied (Doc. #37).

18                              **BACKGROUND**

19    Plaintiff Nancy Pearl alleges that Defendants subjected her to gender discrimination

20 in violation of 42 U.S.C. 2000e (Title VII), age discrimination in violation of 29 U.S.C. 621 (Age

21 Discrimination in Employment Act), religious discrimination in violation of Title VII, and

22 retaliation, also in violation of Title VII.[1]  (Doc. #5).  Specifically, Plaintiff alleges that

23 Defendant terminated her employment with the Regional Transportation Commission (RTC)

24 on or about October 20, 2004.   (*Id.*).  She alleges that at that time she was terminated

25 Defendant employed no other Directors who were female, Jewish, and over forty years old.

26 (*Id.*).

27

28    _____

[1]Plaintiff, in her opposition, agrees to dismiss both the gender discrimination claims and the retaliation claims.  (Doc. #33, p. 42, p. 43).

1    Further, Plaintiff's amended complaint alleges that during the last year of her
2    employment with Defendant she was subjected to discrimination by Gregory Krause,
3    Executive Director of RTC, in the form of alienation and ostracism.  (*Id.*).  Allegedly,
4    Defendant Krause forbade Plaintiff from utilizing Human Resources to resolve personnel
5    issues but encouraged male Directors to resolve the same type of issues by utilizing the
6    resources available through Defendant's Human Resources Department.  (*Id.*).  She alleges
7    that these actions undermined Plaintiff's professional authority and placed her in a less than
8    equal position as [compared with] her male counterparts."  (*Id.*).  Plaintiff alleges that
9    Defendant Krause did not support her in dealing with her male subordinates while he did
10   support male supervisors in similar situations and that he prevented Plaintiff from
11   participating in dispute resolutions with employees, while permitting male directors to
12   participate.  (*Id.*).

13   Plaintiff also alleges that in January of 2004 Derek Morse, Deputy Executive Director
14   of RTC, referred to Jewish practices as "pagan" and that in February of that same year
15   Plaintiff was accused of blasphemy and anti-Christian comments.  (*Id.*).  Plaintiff alleges that
16   these statements were hostile and offensive and contributed to the ongoing hostile
17   environment to which she was subjected while in Defendant's employ.  (*Id.*).  Plaintiff alleges
18   that she complained about this treatment to Defendant Krause but that he took no action in
19   response.  (*Id.*).

20   Plaintiff's amended complaint also alleges that she notified RTC management of the
21   acts of discrimination to which she was being subjected but that Defendant failed to take any
22   time, adequate remedial action, did not follow its own policies and procedures, and instead
23   placed Plaintiff on administrative leave and ultimately terminated Plaintiff's employment.
24   (*Id.*).  Finally, she alleges that other employees were granted a right to appeal their
25   terminations while she was denied such a right.  (*Id.*).

26   / / /

27   / / /

28
                                    2

1

**DISCUSSION**

*A.*    **Standard for Summary Judgment**

2

3

The purpose of summary judgment is to avoid unnecessary trials when there is no

4

dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

5

F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where,

6

viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there

7

are no genuine issues of material fact in dispute and the moving party is entitled to judgment

8

as a matter of law. Fed. R. Civ. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

9

Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary

10

basis for a reasonable jury to find for the nonmoving party. Fed. R. Civ. P. 50(a). Where

11

reasonable minds could differ on the material facts at issue, however, summary judgment

12

is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516

13

U.S. 1171 (1996).

14

The moving party bears the burden of informing the court of the basis for its motion,

15

together with evidence demonstrating the absence of any genuine issue of material fact.

16

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden,

17

the party opposing the motion may not rest upon mere allegations or denials of the

18

pleadings, but must set forth specific facts showing that there is a genuine issue for trial.

19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit

20

evidence in an inadmissible form, only evidence which might be admissible at trial may be

21

considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c);

22

*Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

23

In evaluating the appropriateness of summary judgment, three steps are necessary:

24

(1) determining whether a fact is material; (2) determining whether there is a genuine issue

25

for the trier of fact, as determined by the documents submitted to the court; and (3)

26

considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S.

27

at 248. As to materiality, only disputes over facts that might affect the outcome of the suit

28

1    under the governing law will properly preclude the entry of summary judgment; factual

2    disputes which are irrelevant or unnecessary will not be considered.  *Id.*  Where there is a

3    complete failure of proof concerning an essential element of the nonmoving party's case, all

4    other facts are rendered immaterial, and the moving party is entitled to judgment as a matter

5    of law. *Celotex*, 477 U.S. at 323.  Summary judgment is not a disfavored procedural shortcut,

6    but an integral part of the federal rules as a whole. *Id*.

7    **B.    Age Discrimination**

8           The Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et. seq., makes

9    it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual [who

10   is at least 40 years old] ... because of such individual's age." *Id.* At §§ 623(a), 631(a).

11   Prima Facie Case

12          To establish a violation of ADEA under a "disparate treatment theory of liability," a

13   plaintiff "must first establish a prima facie case of discrimination." *Coleman v. Quaker Oats*

14   *Co.,* 232 F.3d 1271, 1281 (9th Cir. 2000).  Under the ADEA, a prima facie case of discrimination

15   is made out where a plaintiff shows that (1) she was a member of a the protected class (at

16   least age 40); (2) she was performing her job satisfactorily; (3) she was discharged; and (4)

17   replaced by a substantially younger employee with equal or inferior qualifications. *Id.*, 232

18   F.3d at 1281.  "Very little is required" to satisfy the prima facie case elements. *Nidds v.*

19   *Schindler*, 113 F.3d 912, 916 (9th Cir. 1996).

20          Defendants do not contest that Plaintiff meets the first and third elements of the test.

21   (Doc. #33).  They do, however, argue that she cannot meet her burden on the second and

22   fourth elements. (*Id.*).

23   Whether Plaintiff was performing her job satisfactorily

24          The Circuits do not agree regarding the proper burden on the employee under this

25   element, and no Ninth Circuit case that we have found addresses the debate.  Defendant

26   urges the court to adopt the view advanced by the Southern District of New York in *Dawkins*

27   *v. Witco Corp.*, where the court said that "[w]hether job performance was satisfactory

28                                                    4

depends on the *employer's criteria* for the performance of the job - not the standards that may seem reasonable to the jury or judge." 103 F.Supp.2d 688, 696 (S.D.N.Y., 2000)(emphasis in original). However, the *Dawkins* court relied on a Second Circuit opinion, *Thornley v. Penton Publishing Inc.*, 104 F.3d 26, 29 (2d Cir 1997), that has since been partially abrogated by later Second Circuit case law. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001)(clarifying that all is required is that the plaintiff establish basic eligibility for the position at issue, not the greater showing that the plaintiff satisfies the employer). Further, many jurisdictions, including the Second, Fifth, Sixth, Tenth, and Eleventh Circuits follow the alternate view, where the plaintiff need only show that he or she has the basic skills or objective professional qualifications necessary for the job. *See Slattery*, 248 F.3d 87; *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354 (11th Cir. 1999); *MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115 (10th Cir. 1991); *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503 (5th Cir. 1988); *Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176 (6th Cir. 1983). We think this is the better view. The *Slattery* court explained how little the Plaintiff must set forth under this prong:

> The qualification prong must not, however, be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his prima facie case, the employer's proffer of a legitimate, non-discriminatory basis for its decision. As we have repeatedly held, the qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he possesses the basic skills necessary for performance of [the] job.

*Slattery*, 238 F.3d at 92 (internal quotations omitted).

Here, Defendant's arguments focus solely on the criteria set out by the Southern District of New York. The motion does not address whether Plaintiff possessed the basic qualifications for the position. Further, the Seventh Circuit case that Defendant cites, *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 865-66 (7th Cir. 1996), does not discuss the second prong; the cited portion focuses on the employer's burden *after* the employee makes out a prima facie case. At this stage, under this prong, we must only determine whether Plaintiff possessed the basic skills necessary for the job. As already stated, Defendant does not

address this. Likewise, Plaintiff's arguments focus on rebutting Defendant's argument rather than on whether Plaintiff satisfied the standard adopted by the greater number of jurisdictions. Defendant's arguments go to the question of whether they had a legitimate, non-discriminating reason for discharging Plaintiff, a question that becomes relevant only in the later part of the analysis. However, despite the dearth of on-point arguments we think that given the facts set forth by each party, a fair inference can be made that Plaintiff *did* possess the basic skills necessary for the job. For example, Defendant admits that Plaintiff was hired in June of 1998 as a marketing manager with the position title later being reclassified to make Plaintiff a director. (Doc. #27). From this, and from her continuous employment at RTC from then until her termination in October of 2004, the inference can be drawn that Plaintiff possessed the necessary job qualifications at the time of hire and continued to possess them. Plaintiff had not recently assumed her position at RTC; if she had not possessed the necessary basic qualifications this would have been evidenced years before she was actually terminated. Thus, drawing all inferences in favor of the non-moving party, Defendant's evidence shows that Plaintiffs burden has been met on this point.

<u>Whether Plaintiff was replaced by a substantially younger employee with equal or inferior qualifications</u>

The plaintiff must also show, as part of the prima facie case, that she was replaced by a substantially younger employee with equal or inferior qualifications. *See Coleman*, 232 F.3d at 1281.

Here, Plaintiff was replaced by Angela White, who was initially made acting director, and then, later, was selected as the permanent marketing director . (Doc. #33, Exh. 35; Doc. #33, Krause Deposition, p. 80). Although Defendant's reply asserts that Plaintiff has failed to bring forth any evidence of Ms. White's age, they did not make this argument in their motion. (Doc. #27). Instead, the motion argues that Plaintiff was not replaced by someone with equal or inferior qualifications. (*Id*.). First, Plaintiff need not prove Ms. White's age for purposes of opposing the motion since the motion did not challenge that aspect. Second, a

dispute of material fact remains regarding whether Ms. White's qualifications were equal or inferior to Plaintiff's. Although Defendant has shown that Ms. White had considerable experience in marketing and that her staff evaluations have been positive (Doc. # 27, Exh. A), Plaintiff has shown that Defendant admits that Ms. White is paid less than Plaintiff was paid. (Doc. #33, Burlie deposition, p. 44). Further, in her declaration Plaintiff swears that she had nearly thirty years experience in marketing and related fields at the time she joined the staff at Defendant. (Doc. #33, Pearl declaration). Thus, making all inferences in favor of the non-moving party, Plaintiff, Defendant has not shown that there is no dispute of material fact regarding whether Plaintiff's replacement was equally or less qualified than Plaintiff. Moreover, the fact that Ms. White was paid less than Plaintiff tends to support an inference that she was *less* qualified. As such, a dispute of material facts remains regarding whether Plaintiff was replaced by someone with equal or inferior qualifications.

Whether Defendant had a legitimate, non-discriminatory business reason for terminating Plaintiff and whether Defendant's proffered reasons were pretextual

If the plaintiff does make out a prima facie case, the burden then shifts to the employer to "articulate a legitimate nondiscriminatory reason for its employment decision." *Coleman*, 232 F.3d at 1281. "Once the employer meets this burden, the presumption of discrimination drops away." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996). Then, the plaintiff must show that the employer's reason "is a pretext for another motive which is discriminatory." *Coleman*, 232 F.3d at 1281 (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

Here, it is undisputed that there were ongoing conflicts between Plaintiff and the staff she supervised. (Doc. #33). Plaintiff argues only that Defendant's handling of the conflict shows pretext. (*Id.*). Thus, Plaintiff essentially admits that the conflict satisfies Defendant's burden to articulate a legitimate non-discriminatory reason for terminating Plaintiff's employment. Thus, the issue here is whether Defendant's proffered reason for firing Plaintiff

(the conflict between Plaintiff and staff) was a pretext, concealing the real reason for the termination: Plaintiff's age.

A plaintiff can prove pretext in two ways: "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *See Chuang v. University of California Davis. Bd. of Trustees,* 225 F.3d 1115, 1127 (9th Cir., 2000). Direct evidence proves the fact of discriminatory animus without inference or presumption. *Boddett v. Coxcom,* 366 F.3d 736, 743 (9th Cir. 2004). Where the plaintiff relies on circumstantial evidence of pretext, that evidence must be both specific and substantial. *See Coleman,* 232 F.3d at 1282. "To satisfy that burden, and survive summary judgment," a plaintiff "must produce enough evidence to allow a reasonable fact finder to conclude *either*: (a) that the alleged reason for [the plaintiff's] discharge was false, *or* (b) that the true reason for his discharge was a discriminatory one." *Nidds,* 113 F.3d at 918 (emphasis in original). If the evidence offered by the plaintiff is not sufficiently probative to allow a reasonable jury to conclude that the employer's stated reason for the plaintiff's discharge was false or that the true reason for the discharge is discriminatory, granting summary judgment is warranted. *Id.*

Here, Plaintiff has provided no direct evidence that age discrimination was the real reason for her termination. Further, Plaintiff has not set forth sufficient circumstantial evidence to show that the alleged reason for her termination was false, or that the real reason was her age.

First, Plaintiff argues that Defendant's reasons for terminating Plaintiff were pretextual because not all of the feedback from Plaintiff's staff was negative and because in 2003 Mr. Krause, Executive Director of RTC, was aware of staff's complaints regarding Plaintiff and yet gave Plaintiff a "very good" rating in the leadership category despite those complaints. (Doc. #33). However, Plaintiff admitted in her deposition that this rating was given after a conversation between her and Mr. Krause, during which Plaintiff explained to

him what she had done to try to improve in the management area and Mr. Krause gave Plaintiff suggestions on communication with staff, team building, etc. (Doc. #27, Exh. F, p. 42-44). Given the context, Plaintiff's receipt of a "very good" mark in leadership does not raise an inference that her management (or alleged mismanagement) of her staff was a pretext for her termination.

Next, Plaintiff argues that when some staff complained about her in December of 2003, Mr. Krause failed to "make any distinction between perceptions [of the staff] and reality." (Doc. #33). Plaintiff finds suspicious Mr. Krause's electing to hire a facilitator prior to investigating the veracity of the allegations. (*Id.*). Plaintiff thinks Mr. Krause lacked objectivity, failed to treat Plaintiff with a "presumption of innocence", and that his actions show that he had his "own agenda." (*Id.*). Whether or not Mr. Krause's managerial strategy was sound is not important; what matters is whether the strategy was adopted based on Plaintiff's age in an effort to get rid of her. Plaintiff also argues that Mr. Burlie's, the facilitator, recommendation that she be terminated shows pretext since it was based not on the truth of the allegations but on "perceptions and threats of staff." (*Id.*). The court does not see how these facts raise an inference that Plaintiff's age was the reason Mr. Krause adopted this strategy. Further, staff perceptions are not an impermissible reason to fire an at-will manager, even if the perception were not "realities." Plaintiff imagines a conspiracy, apparently including her replacement, Ms. Angela White, to have Plaintiff removed from her position. (*Id.*). Plaintiff does not cite any evidence of this, and even if there was a "conspiracy" or even if her staff were ganging up on her, that would still not show that her termination was related to her age. Plaintiff has failed to satisfy her burden by bringing forth some evidence of pretext. The motion for summary judgment on Plaintiff's ADEA claim is ***GRANTED***.

/ / /

/ / /

/ / /

9

**C.    Gender Discrimination**

As stated above, Plaintiff, in her opposition (Doc. #33), agrees that she lacks sufficient evidence to prove her gender discrimination claim.  As such, the motion for summary judgment on Plaintiff's gender discrimination claim is ***GRANTED***.

**D.    Religious Discrimination**

Title VII prohibits, among other things, an employer from discriminating against any individual because of her religion. 42 U.S.C. §2000e-2-(a)(1).  A prima facie case of religious discrimination requires a showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or circumstances surrounding the adverse employment action give rise to an inference of discrimination.  *Boddett*, 366 F.3d at 743.

Here, Defendant contends that Plaintiff cannot meet the second or fourth elements. (Doc. #27).  Our analysis above dealing with whether Plaintiff is qualified for the position applies equally here; Plaintiff has met her burden on that element for purposes of this motion.  *Supra*.  Thus, we next turn to the question of whether similarly situated individuals were treated more favorable than Plaintiff.  Defendant's motion contends that Plaintiff cannot show that any similarly situated individuals were treated differently.  (Doc. #27). Plaintiff argues that Defendant treated her differently from Mr. Derek Morse, a Christian: when a former employee, Ms. Geraldine McFadden, made claims of religious discrimination against Plaintiff, a Jew, Defendant allegedly assumed it was true, whereas when Plaintiff made claims of religious discrimination against Mr. Morse, a Christian, Defendant (through Mr. Krause) simply had a talk with Mr. Morse . (Doc. #33).  First, Plaintiff does not cite to any admissible evidence to support the proposition that Mr. Krause assumed the allegations against Plaintiff were true.  Second, even if she had brought forth such evidence this would not help prove this element since the adverse employment action she suffered (termination) was completely unrelated to the alleged disparate treatment.  However,  Plaintiff can still

make out a prima facie case if she can show that the circumstances surrounding her termination give rise to an inference of discrimination. *Boddett*, 366 F.3d at 743. Here again, Plaintiff cannot make such a showing. The evidence she brings forth establishes (at best) that an insensitive remark was made to Plaintiff about her religion[2] and that an investigation eventually showed that the allegations Ms. McFadden made against Plaintiff lacked merit. (Doc. #33, Exh. 11). The comment regarding Plaintiff's religion was allegedly made prior to February of 2004 (Doc. #33, Exh. 7) and the memo from Defendant's in-house counsel regarding his investigation of the McFadden matter is dated March 29, 2004. (Doc. #33, Exh. 11). To infer from these two pieces of evidence that animus towards Plaintiff motivated her termination in December of 2004, more than eight months later, simply asks too much. Plaintiff also bring forth some hearsay evidence that Linda Williams, finance administrator for Defendant, informed Plaintiff that Mr. Peck informed Ms. Williams that Plaintiff was fired because Defendant believed Ms. McFadden's allegations that Plaintiff discriminated against Ms. McFadden based on McFadden's religion. (Doc. #33, Pearl Affidavit). Even setting aside the hearsay problems, this also misses the mark. Even if it were true that Defendant fired Plaintiff because they believed she had discriminated against Ms. McFadden, this does not even raise an inference that *Plaintiff's* religion had anything to do with her termination or that the termination was motivated in any way by Plaintiff's Judaism. Plaintiff has not established a prima facie case of religious discrimination under Title VII. The motion for summary judgment is ***GRANTED*** as to that claim.

/ / /

/ / /

/ / /

---

[2] According to Plaintiff, Mr. Morse asked her "Is there a Jewish new years celebration because I am interested in pagan rituals?" (Doc. #33). Further, we note with amusement Defendant's argument that this cannot possibly be offensive to Plaintiff since "pagan" refers to polytheistic faiths, while Judaism is a monotheistic faith. (Doc. #37, p. 35). Suggesting that a monotheist is a polytheist could reasonably be offensive. Moreover, another meaning of "pagan" is "irreligious or hedonistic," which could also be offensive to a person of faith. *See* http://dictionary.reference.com/browse/pagan.

1

**E.     Retaliation**

2        As stated above, Plaintiff, in her opposition (Doc. #33), agrees that she lacks sufficient

3  evidence to prove her retaliation claim.  As such, the motion for summary judgment on

4  Plaintiff's retaliation claim is ***GRANTED***.

5                                       **CONCLUSION**

6        For the reasons set forth above, Defendant's Motion for Summary Judgment

7  (Doc. #27) is ***GRANTED*** as to all claims.

8        LET JUDGMENT BE ENTERED ACCORDINGLY.

9        DATED:   August 9, 2007.

10

11                                       _____

12                                       UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                            12